SAMUEL BRUCE *v.* GREENBANKS & ADAMS.

*Pleading.    Variance.*

The plaintiff alleged in his declaration that he delivered a quantity of wool to the defendants, who were manufacturers of woolen goods, to be by them properly sorted and manufactured into cloth, for which he was to pay them thirty cents per yard for every yard of cloth manufactured from his wool, and that the defendants accepted the wool for the purpose of properly sorting and manufacturing it into cloth for the plaintiff, and then to deliver all the cloth which the wool would properly make to the plaintiff, for the stipulated price per yard. It appeared on the trial that the defendants were not expected to keep the plaintiff's wool separate and manufacture it by itself, but that they were to mingle it with the wool of like grade and quality of other customers, and give the plaintiff his fair share of the cloth, and of the fair and average quality, from all the wool mixed in the process of manufacture; *Held,* that there was no substantial variance between the declaration and the proof.

Bruce *v.* Greenbanks & Adams.

CASE. The declaration alleged that the plaintiff, on the 1st day of July, 1855, delivered to the defendants, who were manufacturers of woolen goods, twelve hundred pounds of wool to be by them properly sorted and manufactured into cloth, for which the plaintiff was to pay them the sum of thirty cents a yard for every yard of cloth manufactured from his wool; that the defendants accepted and received the wool for the purpose of properly sorting and manufacturing it into cloth for the plaintiff, and then to deliver all the cloth which the wool would properly make to the plaintiff by the 15th day of July, 1855, for said sum of thirty cents a yard. Yet that the defendants, on the 15th day of July, 1855, wrongfully converted and disposed of a large amount of the plaintiff's wool, to wit, six hundred pounds, to their own use, and mixed with the residue thereof a large quantity of cotton, and manufactured the wool and cotton, so mixed, into cloth, of which one-half was cotton ; and on the 15th day of October, delivered the cloth to the plaintiff, as and for cloth made wholly from the plaintiff's wool, at the rate of one yard of cloth for each pound and a quarter of wool so delivered and received to be manufactured into cloth; whereby the plaintiff was not only deprived of the wool which the defendants converted and disposed of to their own use, but also the residue of the wool so manufactured into cloth was greatly lessened in value and rendered of little use and value to the plaintiff by reason of the great proportion of cotton in the cloth.

The defendants pleaded the general issue, and the case was tried by jury at the June Term, 1860,—ALDIS, J., presiding.

The testimony of both the plaintiff and the defendants on the trial tended to show that the defendants were not expected to keep the plaintiff's wool separate, and manufacture it by itself alone, but that they were to mingle it with the wools of other customers, of like grade and quality, and give the plaintiff his fair share of cloth and of his fair and average quality from all the wools so mingled in the process of manufacture.

Upon this showing the defendants claimed that upon the averments in the plaintiff's declaration the plaintiff could not recover ; that in order to recover, the plaintiff must show that the contract between the parties was that the *identical* cloth made from the

plaintiff's wool alone, and not from the wool of the plaintiff mixed with the wool of others, was to be returned to the plaintiff. It appeared that it was the custom in woolen manufactories to mingle the wools of customers together and sort it into different grades, and give to each customer his fair share in amount and quality of cloth so made.

The court ruled that the plaintiff could recover even though the jury should find that the contract was that the plaintiff was to have his wool mingled with that of others in the usual way and have cloth returned to him though made of his wool mingled with others, and not from his wool alone. To this decision the defendants excepted.

*B. N. Davis,* for the defendants.

*A. Underwood,* for the plaintiff.

PIERPOINT, J. The only question urged upon our consideration in the argument was, whether or not there was such a variance between the contract as set out in the declaration and that shown upon the trial, as to make it the duty of the court to direct a verdict for the defendant. This is an action upon the case, but no question is made but that the plaintiff is bound to prove the contract upon which he relies, substantially as he has set it out in his declaration, the same as though he had declared in assumpsit. The plaintiff alleges that he delivered a quantity of wool to the defendants to be by them *properly* sorted and manufactured into cloth, for which he was to pay the defendants thirty cents per yard for each and every yard of cloth manufactured from the plaintiff's wool, and that the defendants accepted and received said wool for the purpose of *properly* sorting and manufacturing it into cloth for the plaintiff, and then to deliver all the cloth which said wool would *properly* make, to the plaintiff for said sum of thirty cents, etc.

The case shows that the testimony of both parties tended to prove that the defendants were not expected to keep the plaintiff's wool separate and manufacture it by itself, but that they were to mingle it with other wools of other customers of like grade and quality, and give the plaintiff his fair share of the cloth and of

the fair and average quality, from all the wools so mingled in the process of manufacture. It is in this that the variance is claimed to exist.

It may be observed that the case does not show what was said by the parties as to the manner in which the wool was to be manufactured, whether separately or by mixing it with that of other customers. It does appear that it was the custom in all woolen manufactories to mingle the wools of customers together, and to sort, manufacture and divide it, as was done in this case. For ought that appears, the expectation of the parties arose entirely from their knowledge of this custom, and not from anything that was said about it in making the agreement. The language of the contract may have been precisely that alleged in the declaration.

But however that may be, is there any substantial difference between the agreement as set forth in the declaration and that shown by the proof? What is meant by the words "*properly manufactured,*" as used in the declaration? Evidently, that it should be well done, and in the usual manner. It is quite probable that in manufacturing wool into cloth it is more economical to work large quantities of the same grade together than to work it in separate lots, and that such is the practice in the factories. If so, it could hardly be said that a lot of wool was *properly* manufactured that was sorted into several small parcels and each parcel worked up by itself, thus producing a less quantity of cloth than would have been produced if the wool had been mixed with other wool of the same grade, and the cloth divided according to the relative proportions and in the usual manner.

Again, it is said in the declaration that the defendants were to "deliver all the cloth which said wool would *properly* make;" that is, all the wool would make when well manufactured in the usual way. Looking at the language of the declaration in this light, it is clear that there is no substantial variance between the declaration and the proof. The evidence only gives the substantial meaning of the declaration more in detail and at length, but we think it substantially the same.

Judgment of the county court affirmed.